IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,            :
                              :
        Plaintiff,            :
                              :   CIVIL ACTION
   v.                         :
                              :   NO. 05-4874
TRUSTEES OF THE UNIVERSITY OF :
PENNSYLVANIA,                 :
                              :
        Defendant.            :

## MEMORANDUM AND ORDER

January 2, 2008

**Tucker, J.**

Presently before this Court is Defendant's Motion for Summary Judgment (Doc. 21). For the reasons set forth below, upon consideration of Defendants' Motion, Plaintiff's Response (Doc. 41), and Defendant's Reply (Doc. 42), this Court will grant Defendants' Motion.

## BACKGROUND

From the evidence of record, taken in a light most favorable to the Plaintiff, the pertinent facts are as follows. On February 4, 2002, Plaintiff, Gordon Ray Parker, filed a previous employment discrimination action against Defendant, Trustees of the University of Pennsylvania. In the previous suit, Plaintiff alleged claims of race discrimination, gender discrimination, retaliation, and disability discrimination in connection with a resume submitted electronically to Defendant's human resources website on July 16, 2001. The previous suit ended in a grant of summary judgment for Defendant.

In granting Defendant's motion for summary judgment, the trial court found that Defendant provided a legitimate, non-discriminatory reason for not hiring Plaintiff—namely, Plaintiff had not applied for a position. Attached to Defendant's motion was an affidavit, dated

May 1, 2003, in which Defendant's Manager of Recruitment and Staff, Donna Showell-Brown, explained Defendants' hiring policies with regard to electronic resume submissions (hereinafter "Showell-Brown affidavit"). In the affidavit, Ms. Showell-Brown explained that job applicants who applied via Defendant's website could either submit a job-specific or general resume. Ms. Showell-Brown further disclosed that due to a host of factors—the large number of applications received, the sufficiency of the number of applicants applying for specific job positions, and the administrative burden presented by a search through the general resume submissions—only those applicants who had submitted job-specific resumes were considered for employment and eventually hired by Defendant. Because Plaintiff submitted a general resume—rather than a job-specific resume—Defendant did not consider him for employment. The trial court concluded that Defendant had proffered a legitimate, non-discriminatory reason for not hiring Plaintiff. The trial court also found that Plaintiff had failed to provide sufficient evidence of pretext. The trial court's decision granting summary judgment to Defendant was affirmed by the U.S. Court of Appeals for the Third Circuit. Parker v. Univ. of Pa., 128 Fed. Appx. 944, 945 (3d Cir. 2005).

Although Plaintiff was formally served with the Showell-Brown affidavit on June 5, 2003, he learned prior to receiving the affidavit that Defendant intended to defend the previous suit with evidence that Plaintiff had failed to apply for a position. On March 20, 2002, Plaintiff became aware of Defendant's intended defense via an article in the Daily Pennsylvanian. As a result, on March 20, 2002 through November 5, 2003, Plaintiff submitted 90-100 resumes for specific administrative positions. Plaintiff received four interviews but no offers of employment.

On November 3, 2004, while conducting a search of Public Access to Court Electronic Records ("PACER"), Plaintiff discovered an employment discrimination complaint filed by Tina

2

Vignali against Defendant (hereinafter "Vignali Complaint"). Amongst the allegations of the Vignali Complaint were the following averments: (1) Defendant, via its former employee, Ramin Sedehi, Vice Dean for Finance and Administration, created the position of Assistant Vice Dean for Finance and Administration for Ms. Vignali, and (2) Defendant hired Ms. Vignali on January 6, 2003 without posting the position on its website or considering other candidates.

On April 11, 2005, Plaintiff filed an administrative complaint with the Philadelphia Commission on Human Relations ("PCHR"). On April 28, 2005, Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's administrative filings alleged that Defendant had engaged in gender discrimination, disability discrimination, and retaliation. Both agencies rejected Plaintiff's claims as untimely.

Beginning on May 25, 2005, Defendant hired Plaintiff to perform three separate transcription projects. The second and third transcription projects, which were performed after Plaintiff filed the instant suit, arose from referrals from the first and second projects respectively.

Plaintiff filed the instant suit against Defendant on September 12, 2005. Here, Plaintiff alleges the following claims: (1) gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to e-17, and the Pennsylvania Human Rights Act ("PHRA"), 43 PA. CONS. STAT. §§ 951-63; (2) "failure to hire against the public interest" under the PHRA; and (3) fraudulent and/or negligent misrepresentation. Defendant now moves for summary judgment on all counts of Plaintiff's Complaint.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis of its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against opponent, even if the quality of the movant's evidence far outweighs that of its opponent." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson,

477 U.S. at 255.

## DISCUSSION

Defendant contends that it is entitled to summary judgment because (1) Plaintiff's claims are time-barred, (2) res judicata bars the instant suit, and (3) Plaintiff has not set forth sufficient evidence to support his claims. This Court will grant Defendant's Motion.

### A.   Plaintiff's Common Law Claims

Defendant argues that Plaintiff's fraudulent and negligent misrepresentation claims are time-barred. While Plaintiff does not dispute the untimeliness of his common law claims, in the interest of justice, this Court will nonetheless ensure that Plaintiff's misrepresentation claims are indeed untimely. Under Pennsylvania law, fraudulent or negligent misrepresentation claims must be filed within two years of the date of the allegedly harmful conduct. 42 PA. CONS. STAT. § 5524(7). Here, Plaintiff claims that Defendant, in the Showell-Brown affidavit, dated May 1, 2003 and received by Plaintiff on June 5, 2003, misrepresented its hiring process by failing to acknowledge that it also engaged in active recruiting, as evidenced by Defendant's hiring of Ms. Vignali. Because Plaintiff did not file suit until September 12, 2005, months after the statute of limitations had expired, his negligent and fraudulent misrepresentation claims are time-barred.

### B.   Plaintiff's Statutory Claims

Next, Defendant argues that Plaintiff's statutory claims should be dismissed because they are untimely and unsupported by sufficient evidence. Plaintiff's statutory claims allege gender and retaliatory discrimination under Title VII and the PHRA and "failure to hire against the public interest" under the PHRA. Plaintiff contends that his gender and retaliatory discrimination claims are not time-barred because they are based on continuing violations.

5

Plaintiff also argues that his gender discrimination claims are preserved by at least one of the following doctrines: the discovery rule, equitable tolling, equitable estoppel, or piggybacking. Even assuming <u>arguendo</u> that Plaintiff's statutory claims are timely, this Court finds that Plaintiff has failed to provide sufficient evidence to support his claims.

### A.    Gender Discrimination Claims

Plaintiff's gender discrimination claims are based largely on the averments of the Vignali Complaint. In her complaint, Ms. Vignali alleges that due to Defendant's knowledge of her job search, Defendant created specifically for her the position of Assistant Vice Dean for Finance and Administration. Ms. Vignali further alleges that Defendant hired her without posting the position on its website or otherwise considering other candidates. Plaintiff contends that at the time of Ms. Vignali's hire on January 6, 2003, Defendant was also aware of Plaintiff's job search yet failed to create a position for him. Plaintiff maintains that in hiring Ms. Vignali, Defendant engaged in intentional gender discrimination. First, Defendant retorts that the averments of the Vignali Complaint do not constitute valid evidence to support Plaintiff's gender discrimination claims. Next, Defendant argues that Plaintiff has not set forth any evidence of gender discrimination against him and that in the absence of such evidence, Plaintiff's claims must be dismissed. This Court will grant Defendant's Motion and dismiss Plaintiff's claims.

To prevail on gender discrimination claims under Title VII and the PHRA, the plaintiff must satisfy the three-step burden-shifting inquiry laid out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-03 (1973). <u>Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.</u>, 470 F.3d 535, 539 (3d Cir. 2006). First, the plaintiff must establish a prima facie case of gender discrimination. <u>Id.</u> In the refusal to hire context, the plaintiff must demonstrate through

6

sufficient evidence that (a) he or she was a member of a protected class, (b) he or she was qualified for the job to which he or she applied, and (c) others, not in the protected class, were treated more favorably. Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318 (3d Cir. 2000). If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to provide a legitimate, non-discriminatory reason for its failure to hire the plaintiff. Id. at 319. If the defendant is able to provide such a reason, the burden of production shifts back to the plaintiff to show that the proffered reason is merely a pretext for unlawful discrimination. Id. The ultimate burden of proving intentional discrimination remains at all times on the plaintiff. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 511 (1993).

Here, Plaintiff cannot meet his burden of persuasion. First, Plaintiff has failed to establish a prima facie case of gender discrimination. Plaintiff has shown that he is a member of a protected class (male) and that Tina Vignali, a female, was treated more favorably than him. See Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 78 (U.S. 1998) (stating that Title VII's prohibition of discrimination "because of ... sex" protects both men and women) (citing Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 682 (1983)). However, Plaintiff has not put forth any evidence to show that he either applied or was qualified for the position of Assistant Vice Dean for Finance and Administration. See Bennun v. Rutgers State University, 941 F.2d 154, 171 (3d Cir. 1991) (stating that to satisfy the qualification prong of an intentional discrimination prima facie case, the plaintiff must demonstrate that he or she was "sufficiently qualified to be among those persons from whom a selection, to some extent discretionary, would be made"); see also Dorsey v. Pittsburgh Associates, 90 Fed. Appx. 636, 639 (3d Cir. 2004) (indicating that if a plaintiff cannot show that he or she was qualified for a position, a claim of

discrimination may be rejected without proceeding beyond the prima facie case analysis) (citing Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 n. 4 (3d Cir. 1999)). Next, Plaintiff's contention that he could not have applied for the position—that is, Defendant created the position for Ms. Vignali—does not affect the outcome of this Court's decision. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (stating that a factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material). Even if Defendant created the position for Ms. Vignali, Defendant's actions would not evidence intentional gender discrimination; rather, it would merely show that Defendant did not consider any other candidate—male or female—for the position. Lastly, and most significantly, Defendant did not have a duty to create a position for Plaintiff. Cf. Sieberns v. Wal-Mart Stores, 946 F. Supp. 664, 670 (N.D. Ind. 1996) ("It is well-established that an employer is under no duty to create a position in order to accommodate an individual's disability") (citing 29 C.F.R. § 1630.2(o)). Having no such duty, Defendant's decision not to create a position for Plaintiff despite knowledge of his job search cannot be deemed unlawful gender discrimination under Title VII or the PHRA.

### B.  Retaliation Claims

Plaintiff alleges that Defendant retaliated against him for filing the previous suit by "blacklisting" him from employment at the University of Pennsylvania.[1] Defendant argues that

---

[1] Plaintiff also claims that Defendant retaliated against him by (1) denying him access to its computer system to identify a student, Wintermute, who had sent Plaintiff threatening e-mails and posted defamatory messages about Plaintiff on the internet and (2) asserting in filings in the previous suit that Plaintiff was "unemployable."
  Plaintiff's claim of retaliation by denial of access to the identity of Wintermute is barred by the doctrine of res judicata. On June 9, 2005, Plaintiff filed a RICO action against Defendant, alleging that Defendant committed predicate acts by refusing to identify Wintermute and disclaiming knowledge of his identity. See Parker v. Learn the Skills Corp., No. 05-2752, 2006 U.S. Dist. LEXIS 12468, at *23-24 (E.D. Pa. Mar. 23, 2006) (granting Defendant's motion to dismiss). Because Plaintiff's retaliation by denial of access claim stems from the same factual

Plaintiff has not provided sufficient evidence to support his retaliation claims. Defendant also argues that Plaintiff's claims of retaliation are belied by Defendant's hiring of Plaintiff to perform three transcription projects beginning on May 25, 2005, prior to Plaintiff filing the instant suit. Title VII provides that an employer shall not "discriminate against" a job applicant because that individual has "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). Similarly, the PHRA forbids an employer from discriminating against "any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act." 43 PA. CONS. STAT. § 955(d). Retaliation claims under Title VII and the PHRA are analyzed under the framework set forth in McDonnell Douglas. Marra v. Phila. Hous. Auth., 497 F.3d 286, 301 (3d Cir. 2007).

Under the McDonnell Douglas framework, the plaintiff must first establish a prima facie case of retaliation. Id. The plaintiff must demonstrate that (1) he or she was engaged in protected activity, (2) the employer took adverse action either after or contemporaneous with the protected activity, and (3) a causal connection exists between the protected activity and the employer's adverse action. Id. If the plaintiff establishes a prima facie case, the burden of production then shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action. Id. If the employer provides such a reason, the burden of production shifts back

---

background as the RICO claim filed three months before the instant suit, it is barred by res judicata.
  Next, statements made by Defendant regarding Plaintiff's employability do not constitute retaliation. Instead, these statements should be viewed in context, as Defendant's responses and contentions in the previous suit. As arguments in favor of Defendant's position in the previous suit, these statements do not amount to retaliation.

9

to the plaintiff to prove, by a preponderance of the evidence, that the reason articulated by the employer is false and retaliation was the real reason for the adverse action. Id. The burden of persuasion, however, remains with the plaintiff at all times. Id. at 301 n.1.

In the instant suit, Plaintiff has established the first and second prongs of his prima facie case of retaliation. Plaintiff engaged in protected activity by filing the previous suit on February 4, 2002. Zappan v. Pa. Bd. of Prob. & Parole, 152 Fed. Appx. 211, 217-218 (3d Cir. 2005) (stating that an individual engages in protected activity under Title VII and the PHRA when he or she (1) opposes an unlawful employment practice, (2) files a charge of discrimination, or (3) participates in a charge brought by another) (citing 42 U.S.C. § 2000e-3a; 43 PA. CONS. STAT. § 955(d)). Thereafter, Defendant took adverse action against Plaintiff by not hiring Plaintiff for any of the positions to which he applied on March 20, 2002 through November 5, 2003.

The record, however, does not support a causal connection between Plaintiff's filing of the previous suit and the subsequent adverse action taken by Defendant. Plaintiff has produced no evidence, other than temporal proximity, to demonstrate that Defendant's decision not to hire him was motivated by retaliatory animus. See Marra, 497 F.3d at 302 (stating that the requisite causal connection may be shown either through temporal proximity or evidence of actual antagonistic conduct or animus). In some instances, temporal proximity may be sufficient to trigger an inference of retaliatory animus, but only where timing is "unusually suggestive." Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003); see also Lebon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) (finding that three months between the filing of a complaint and occurrence of the adverse action is too long a period to be deemed "unusually suggestive"); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (concluding that

10

termination two days after the employee filed an EEOC charge was "unusually suggestive").

Here, Plaintiff filed the previous suit on February 4, 2002. Plaintiff applied for 90-100 administrative positions on March 20, 2002 through November 3, 2003—that is, shortly after learning that he had not been previously hired due to his failure to submit a job-specific resume. Because Plaintiff created the temporal proximity at issue, the timing of Defendant's decision not to hire Plaintiff cannot be deemed "unusually suggestive" of retaliatory motives. In the absence of unusually suggestive timing, Plaintiff must set forth evidence of actual retaliatory animus. Marra, 497 F.3d at 302. Plaintiff has failed to do so. The record contains no evidence that Defendant failed to hire Plaintiff despite Plaintiff's qualification for the positions at issue. Plaintiff has neither alleged nor established that he was qualified for any of the positions to which he applied via Defendant's website. Moreover, Plaintiff's contention that he was "blacklisted" is belied by his employment with Defendant to perform transcription three projects beginning on May 25, 2005, prior to Plaintiff's filing of the instant lawsuit. Without evidence of retaliatory animus, Plaintiff's retaliation claims must be dismissed.

### C. Failure to Hire Against the Public Interest

Plaintiff's Complaint alleges a claim of failure to hire against the public interest under the PHRA. Plaintiff has not provided and this Court is unable to locate a statutory basis for this claim. Accordingly, Plaintiff's failure to hire against the public interest claim is dismissed.

### CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. Judgment is entered in favor of Defendant and against Plaintiff for summary judgment on all counts of the Complaint. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GORDON ROY PARKER,<br><br>    Plaintiff,<br><br>v.<br><br>TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,<br><br>    Defendant. | :<br>:<br>:<br>:   CIVIL ACTION<br>:<br>:   NO. 05-4874<br>:<br>:<br>:<br>:<br>: |

## ORDER

AND NOW, this 2nd day of January 2008, upon consideration of Defendant's Motion for Summary Judgment (Doc. 21), Plaintiff's Response (Doc. 41), and Defendant's Reply (Doc. 42), **IT IS HEREBY ORDERED AND DECREED** as follows:

1. Defendant's Motion for Summary Judgment is **GRANTED**.

2. Plaintiff's Motion for New Scheduling Order and Stay (Doc. 45) is **DISMISSED AS MOOT**.

3. The Clerk of the Court shall mark the above-captioned case **CLOSED**.

BY THE COURT:

_Petrese B. Tucker_
Hon. Petrese B. Tucker, U.S.D.J.